# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

DIPA BHATTARAI AND TYLER BARKER                                              PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:19-CV-560-DPJ-FKB

LYNN FITCH, in her official capacity as                                       DEFENDANTS
Attorney General for the State of Mississippi,
ET AL.[1]

## ORDER

Plaintiffs Dipa Bhattarai and Tyler Barker have challenged Mississippi's cosmetology-licensing system, claiming it is unconstitutional. Defendant Sharon Clark, Executive Director of the Mississippi State Board of Cosmetology, asks the Court to dismiss her has a defendant on standing and immunity grounds. For the following reasons, Clark's Motion to Dismiss [11] is granted.

I.    Background

Plaintiffs are engaged in the business of eyebrow threading, a "practice that involves the removal of facial hair, most commonly around the eyebrows, by using a single strand of cotton thread . . . to lift unwanted hair from its follicle." Compl. [1] ¶ 6. Bhattarai owns eyebrow-threading businesses with her brother in Columbus and Starkville, Mississippi. *Id.* ¶ 47. Barker, on the other hand, "is a young entrepreneur who wants to partner with Ms. Bhattarai to start a threading business in Mississippi[.]" *Id.* ¶ 29.

---

[1] Although the Complaint named Jim Hood in his official capacity as Attorney General, he no longer holds that office. Under Federal Rule of Civil Procedure 25(d), "[a]n action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." Accordingly, the Court substitutes Lynn Fitch in her official capacity as the newly elected Mississippi Attorney General.

Neither Bhattarai nor Barker possesses the statutorily required license to practice eyebrow threading in Mississippi. So, in February 2018, an inspector with the Mississippi Board of Cosmetology ("the Board") visited Bhattarai's business. *Id.* ¶ 48. The inspector found that Bhattarai had been threading without a license, "issued citations with administrative fines," and "demanded that Ms. Bhattarai shut down her business." *Id.* She complied and ceased operations. *Id.* ¶ 49.

Bhattarai subsequently applied for an esthetician's license by reciprocity based on her "voluntary beautician certification from a private organization in Nepal." *Id.* ¶ 50. The Board denied her application. *Id.* ¶ 51. Then, both Bhattarai and Barker applied to sit for the esthetician-licensing exam, but the Board denied their applications. *Id.* ¶¶ 59–60, 75–76.

Plaintiffs filed this action in August 2019 against the Attorney General of Mississippi, each individual Board member, and Clark, in her official capacity, alleging that Mississippi's licensing scheme violates their federal and state constitutional rights. Clark filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) arguing that the Court lacks subject-matter jurisdiction because "Plaintiffs lack Article III standing." Def.'s Mem. [12] at 2. She also says Plaintiffs' "declaratory and injunctive claims are barred by the Eleventh Amendment as Ms. Clark lacks the requisite connection to the enforcement of the challenged statutes." *Id.* at 2–3. The motion has been fully briefed.

II. Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (footnote and internal quotation marks omitted). The party asserting jurisdiction "'bears the burden of proof for [Rule] 12(b)(1) motion

2

to dismiss.'" *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 413 (5th Cir. 2013) (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)). "[A]t the Rule 12(b)(1) stage, [the movant] need only 'allege a plausible set of facts establishing jurisdiction.'" *In re Benjamin*, 932 F.3d 293, 295 (5th Cir. 2019) (quoting *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018)).

III. Analysis

When a defendant challenges standing and raises the Eleventh-Amendment bar, the Court first addresses standing to determine whether a justiciable "case or controversy" exists. *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990)). "Standing to sue is part of the common understanding of what it takes to make a justiciable case" under Article III of the United States Constitution. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 (1998). And a district court must conduct a "claim-by-claim analysis of Plaintiffs' standing." *In re Gee*, 941 F.3d 153, 170 (5th Cir. 2019).

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Here, the parties dispute the latter two elements, which generally "overlap and are often considered in tandem." *McLemore v. Hosemann*, 414 F. Supp. 3d 876, 883 (S.D. Miss. 2019).

As an initial point, it is not enough to show that the disputed statute caused, or will cause, injury; the plaintiff must show causation and redressability as to each defendant. *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (*en banc*). To establish causation, the injury must be

3

"fairly traceable" to that defendant. *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *see also League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011). Thus, a plaintiff may not "sue a state official who is without any power to enforce the complained-of statute." *Okpalobi*, 244 F.3d at 426 (citing *Gritts v. Fisher*, 224 U.S. 640 (1912); *Muskrat v. United States*, 219 U.S. 346 (1911)).

To establish redressability, a plaintiff "need not show that a favorable decision will relieve his every injury." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982); *see also K.P. v. LeBlanc*, 627 F.3d 115, 123 (5th Cir. 2010) (quoting *Larson*, 456 U.S. at 243 n.15). But there must be a showing that the defendant has "power to redress the asserted injuries." *Okpalobi*, 244 F.3d at 426.

Here, Bhattarai and Barker argue that "Clark is not powerless to enforce the challenged statute[s], but rather, is charged with specific enforcement powers." Pls.' Resp. [16] at 10. The analysis therefore begins by comparing the statutory provisions Plaintiffs challenge to Clark's authority under those provisions because "the required causal connection comes from an officer's 'coercive power' *regarding the disputed statute*." *Campaign for S. Equal. v. Miss. Dep't of Human Servs.*, 175 F. Supp. 3d 691, 702 (S.D. Miss. 2016) (emphasis added) (quoting *Okpalobi*, 244 F.3d at 426). There is no causal connection when "a state official . . . is without any power to enforce *the complained-of statute*." *Okpalobi*, 244 F.3d at 426 (emphasis added).

In their Complaint, Plaintiffs recount their dispute with the Board, including the closing of Bhattarai's business, her failed attempt to obtain a license by reciprocity, and the Board's decision to deny Plaintiffs' request to sit for the licensing exams. While that history provides a backdrop for their suit, their Complaint attacks the "cosmetology licensing regime" as applied to eyebrow threaders. Compl. [1] ¶ 101. So, the ultimate claim appears to assert that the state is

4

violating the United States and Mississippi constitutions by mandating that commercial eyebrow threaders hold licenses that require allegedly unnecessary and irrelevant training. *See id.* ¶¶ 101–134 (describing "cosmetology regime"); *id.* ¶¶ 141–59 (listing alleged injuries).[2]

As relief, they seek a declaration that "the cosmetology licensing regime, its implementing rules and regulations, and the policies and practices of the Mississippi State Board of Cosmetology are unconstitutional when applied to eyebrow threaders generally and to Plaintiffs specifically." *Id.* at 41, ¶ A. They also seek an injunction "prohibiting Defendants from the enforcing cosmetology licensing regime and its implementing rules and regulations against eyebrow threaders generally and against Plaintiffs specifically." *Id.* ¶ B.

Clark has no legal authority with respect to the challenged regime and no ability to effectuate the relief Plaintiffs seek. Starting with the licensing requirements, Mississippi law defines cosmetology and esthetics as including eyebrow threading. Miss. Code Ann. § 73-7-2. So, by statute, persons engaging in eyebrow threading must possess a valid Mississippi cosmetology or esthetician's license. *Id.* § 73-7-2(a)(iv) and (d)(ii). As for the declaratory and injunctive relief Plaintiffs seek from the "implementing rules and regulations," Compl. [1] at 41, ¶¶ A, B, the Board—not its Executive Director—has the statutory "authority to make reasonable rules and regulations," Miss. Code Ann. § 73-7-7(1). The same is true for decisions regarding eligibility to sit for the licensing examinations. By statute, "[t]he board shall admit to examination for an esthetician's license any person who has made application to the board in

---

[2] Specifically, Plaintiffs reference Mississippi Code sections 73-7-9 (requiring licensing); 73-7-18 (providing requirements for esthetician's license); 73-7-12 (authorizing Board to contract for exam testing); 73-7-7, 73-7-27, and 73-7-37 (establishing enforcement and discipline procedures); and 30 Mississippi Administrative Code Part 2101 Rules 1.8, 8.5 (establishing enforcement and discipline procedures); 2.8, 1.13 (providing requirements for esthetician's license); and 5.18 (establishing rules for completing required training).

5

proper form, has paid the required fee, and who" meets certain requirements, including completion of "a course of training in esthetics of not less than six hundred (600) hours in an accredited school." *Id.* § 73-7-18(1).

Finally, as to the enforcement statutes that allow the state to close unlicensed practitioners and establishments, that power too is delegated to the Board. *Id.* § 73-7-37. Such non-licensed practice is a misdemeanor and "the secretary of the board, upon the direction of a majority of the board" has authority to pursue such a charge in Mississippi Chancery Court. *Id.* § 73-7-37(2). The Executive Director is neither a board member nor its secretary. *Id.* § 73-7-1. And the Board has not delegated any of the disputed powers to its Executive Director. *See* 30 Code Miss. R. Pt. 2101, Rs. 2.1, 8.1.

Thus, the Board—not its Executive Director—has the statutory and regulatory authority over the regime Plaintiffs challenge, and this is consistent with Plaintiffs' own factual averments. Aside from conclusory assertions brought collectively against "Defendants," the factual allegations in Plaintiffs' Complaint belie their newfound contention that Clark has authority to cause the pleaded injuries or redress their grievances.

Starting with Bhattarai, the Complaint asserts that "an inspector with the Mississippi Board of Cosmetology came to [her] business . . . and demanded that [she] shut down her business." Compl. [1] at ¶ 48. Bhattarai then attempted to obtain a license by reciprocity. According to Plaintiffs, Bhattarai "applied to the Board" for a license; the "Board denied" her application; she "requested to speak at a Board meeting, to request that the Board eliminate or reduce its regulations"; she eventually made a presentation "to the Board"; the "Board" allowed her two minutes to speak; and the "Board unanimously denied Ms. Bhattarai's request" citing section 73-7-2. *Id.* ¶¶ 50–57. As for her efforts to sit for the examination, the Complaint reflects

6

that Clark sent Bhattarai a letter "informing her that *the Board* had denied her request" to sit for the licensure examinations. *Id.* ¶ 60 (emphasis added). That letter "stated the rationale for *the Board's* decision." *Id.* ¶ 61 (emphasis added). Plaintiffs further allege that the "*Board Defendants* will not allow Ms. Bhattarai to sit for the esthetician licensure examinations until she" completes the regulatory requirements.[3] *Id.* ¶ 63 (emphasis added). Thus, according to Plaintiffs' own averments, the Board made the decisions regarding Bhattarai's license.

The same is true for Barker. According to Plaintiffs, "the Board, through its counsel, . . . sent a letter to Mr. Barker informing him that *the Board* had denied his request" to sit for the esthetician licensure examinations. *Id.* ¶ 76 (emphasis added). They then aver that the Board explained the decision, relying on the fact that Barker had not satisfied the regulatory requirements. *Id.* ¶ 77. And they conclude that "the Board will not allow Mr. Barker to sit for the esthetician licensure examinations until he has completed the 600 hours of approved training." *Id.* ¶ 79.

Again, the sole focus is on the Board, which is consistent with Plaintiffs' claims and the statutory and regulatory regimes they challenge—none of which vest authority in the Executive Director. Said differently, there is no dispute Plaintiffs lacked the statutory and regulatory requirements to obtain a license, and Clark has no authority to amend that process or enforce the current system in any relevant way.

Despite Clark's apparent lack of authority over the statutes and regulations Plaintiffs dispute, they nevertheless assert that Clark has other regulatory authority that creates Article III standing. It is certainly true that Clark has some regulatory authority, so the Court must examine

---

[3] The Complaint defines "Board Defendants" as the members of the Board (i.e., not Clark). Compl. [1] ¶ 31.

whether that authority is causally related to "the complained-of statute" and whether Clark could redress the alleged injuries pursuant to that authority. *Okpalobi*, 244 F.3d at 426. As discussed next, Plaintiffs have shown neither causation nor redressability because they fall outside the categories of individuals governed by the regulations they cite.

To start, the two regulations Plaintiffs cite in support of standing as to Clark both fall under Chapter 8, Part 2101, Title 30, of the Mississippi Administrative Code, governing cosmetology-related disciplinary and administrative actions. Chapter 8 has a limited scope; it "applies to individual students, student instructors, instructors, licensees, salons, [and] schools licensed by the Board." 30 Code Miss. R. Pt. 2101, R. 8.1. Plaintiffs are not students, student instructors, instructors, or licensees.[4] And though Bhattarai owns an eyebrow-threading business, it is not a "salon" because the rules define "salon" as "a *licensed* establishment operated for the purpose of engaging in the practice of cosmetology, or manicuring, or pedicuring, or esthetics, or all." *Id.* at R. 1.2(R) (emphasis added). Bhattarai does not allege that her establishment was licensed.

The regulatory language further demonstrates the point. First, Rule 8.2(A) designates Clark as an "administrative review agent" over "public complaints." A "public complaint" is "[a]ny complaint . . . filed with the Board by . . . any person charging any *licensee of the Board* with the commission of any of the offenses found in Rule 8.1." *Id.* at R. 8.2(A)(1) (emphasis added). After receiving a public complaint, the "administrative review agents" "review [it] to determine that there is substantial justification to believe that the *accused licensee* has committed any of the offenses enumerated." *Id.* at R. 8.2(A)(3) (emphasis added). Plaintiffs are not subject

---

[4] To qualify as an instructor, the individual must teach at a licensed school. 30 Code Miss. R. Pt. 2101, R. 1.2(M).

to this administrative-review process because they are not licensees of the Board. Thus, Clark has no enforcement authority over them under this rule.

The same is true for the second regulation Plaintiffs cite, Rule 8.2(B)(5). That rule governs Board complaints, which are complaints "generated by a Board agent that typically derive[] from an inspection or other Board action." *Id.* at R. 8.2(B). Under the rule, "[t]he Executive Director may execute a Consent Agreement on behalf of the Board" with a "licensee" after the Board finds a violation. *Id.* Again, Plaintiffs are not licensed, and Bhattarai's business was not a licensed salon or school.

Of course, these are not the issues Plaintiffs dispute—they challenge the licensing requirements themselves. And while Clark has certain regulatory-enforcement authority under these rules, she did not have "coercive power" over non-licensed eyebrow threaders or non-licensed eyebrow-threading establishments. *Campaign for S. Equal.*, 175 F. Supp. 3d at 701. Her authority under the rules Plaintiffs cite therefore fails to establish causation or redressability as to the statutes and rules Plaintiffs challenge.

Plaintiffs assert two additional arguments for standing; both lack merit. First, they contend that Clark "already *has* caused injury to Plaintiff Bhattarai" because "Ms. Bhattarai submitted an application to sit for the esthetician licensing examination" and "Clark responded to Ms. Bhattarai's application in a letter" denying her application.[5] Pls.' Resp. [16] at 7–8. The letter is not in the record, but it is clear that Clark lacks the statutory or regulatory authority to decide whether Bhattarai can sit for the examination. *See supra*. Indeed, Plaintiffs pleaded as much when they described the letter as informing Bhattarai that "*the Board had denied her*

---

[5] Plaintiffs do not offer this theory with respect to Barker because his denial letter was from "Special Assistant Attorney General Ken Walley." Compl. [1] ¶ 76.

*request*" to sit for the esthetician's licensing exam. Compl. [1] ¶ 60 (emphasis added). Absent coercive authority Clark holds "no powers to redress the injuries alleged" through the prospective declaratory or injunctive relief Plaintiffs seek. *Okpalobi*, 244 F.3d at 427.[6]

Next, Plaintiffs argue that in 2004, the defendants in *Armstrong v. Lunsford*, No. 3:04-CV-602-BN, did not dispute the Executive Director's authority to take coercive actions. In that case, the complaint stated: "Nelda Luckett is the Executive Director of the Board. The Board is authorized, among other duties, to grant or deny applications for licenses, conduct examinations, and pursue violations of the Mississippi cosmetology laws. Miss. Code Ann. § 73-7-7." Pls.' Resp. [16] at Ex. B, ¶ 7. The defendants, including the Executive Director at the time, apparently admitted this averment. But that observation does little for Plaintiffs' cause. First, subject-matter jurisdiction cannot be waived. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). Second, even it could be waived, Plaintiffs never explain why Clark is bound by Luckett's litigation decisions—or those of the other defendants—some 16 years ago. Finally, the paragraph that Plaintiffs cite from the *Armstrong* complaint does not establish that Luckett was a proper party or that she exercised any authority; it merely says Luckett was the "Executive Director of the Board" and that "*[t]he Board* is authorized" to take certain actions. Pls.' Resp. [16] at Ex. B, ¶ 7 (emphasis added).

In sum, Plaintiffs failed to show "that any act of [Clark] has caused, will cause, or could possibly cause any injury to them." *Okpalobi*, 244 F.3d at 422. Clark's powers are triggered if Plaintiffs obtain a license. Until then, any use of the authority upon which Plaintiffs rely is

---

[6] Plaintiffs speculate that "it appears that Defendant Clark, acting on her own, denied Ms. Bhattarai's application." Pls.' Resp. [16] at 8. That assertion flatly contradicts the pleaded facts and Clark's statutory authority. *See* Miss. Code Ann. § 73-7-18(1)(d). But even if she did, she still lacks legal authority to redress Plaintiffs' claims.

purely hypothetical and speculative. Plaintiffs failed to otherwise establish any likelihood that their alleged injury would be redressed by a favorable ruling against Clark; under Mississippi law, she is powerless to impact the prospective relief they seek. *Id.* Plaintiffs lack standing to assert their claims against Clark.[7]

IV.     Conclusion

The Court has considered all arguments. Those not addressed would not change the outcome. For the stated reasons, Clark's Motion to Dismiss [11] is granted. Clark is terminated as a defendant. The remaining parties are instructed to contact Judge Ball's chambers to schedule a telephonic case-management conference.

**SO ORDERED AND ADJUDGED** this the 10th day of April, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] Because the Court concludes that Plaintiffs lack standing to assert claims against Clark, Eleventh Amendment immunity need not be addressed, though the Court alternatively agrees with Clark that she is not a proper party under the *Ex Parte Young* exception to Eleventh Amendment immunity for the reasons she stated in her briefs.